*11743*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

**K/S ARIES SHIPPING**,

                       Plaintiff,

    - against -

**KENT LINE SALES, LTD.**,

                       Defendant.
---------------------------------------------------------x

Case No. 08 cv 0437

JUDGE PRESKA

**VERIFIED COMPLAINT**

    Plaintiff, **K/S ARIES SHIPPING**, (hereinafter "**ARIES SHIPPING**"), by its attorneys, **JUNGE & MELE, LLP**, complaining of the Defendant **KENT LINE SALES, LTD.**, (hereinafter "**KENT LINE**"), alleges as follows:

    1. This is a case of admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) and a maritime claim within the meaning of Rules 9(h) and 38(e) of the Federal Rules of Civil Procedure.

    2. At all times relevant, Plaintiff, **ARIES SHIPPING**, was a foreign business corporation, registered in Nassau, Bahamas, with an office located at c/o Rederiet Otto Danielsen A/S, Kongevejen 272 a, DK-2830 Virum, Copenhagen, Denmark.

    3. At all times relevant, Defendant, **KENT LINE**, was a foreign business corporation, with an office located at 300 Union Street, PO Box 66, St. John, New Brunswick, Canada E2L 3X1.

    4. Pursuant to a BIMCO Liner Booking Note ("CONLINEBOOKING 2000"), dated at Stamford, Connecticut on November 6, 2006, Plaintiff (the "Carrier") agreed to

transport for Defendant (the "Merchant") a cargo of 3,600 to 3,650 metric tons of wood pulp in bales, each said to weigh 2.26 metric tons, on the vessel, *EVA DANIELSEN* (the "Vessel"), from Pictou or Mulgrave, Nova Scotia, Canada, at defendant's option, for delivery to Northfleet, United Kingdom, at a freight rate of us$36.00 per metric tons, free in/out stowed, lashed, secured and dunnaged by Defendant, and subject to such other terms and conditions as more fully set forth therein. A true copy of the aforesaid CONLINEBOOKING 2000 is annexed hereto as Exhibit "1."

5.   Thereafter, the Vessel arrived at the load port of Pictou, Nova Scotia, on November 21, 2006, where Defendant, its agents, servants, employees or stevedores, began loading the vessel with the aforesaid cargo.

6.   During the aforesaid loading operations by Defendant, its agents, servants, employees or stevedores, several pontoons in the cargo hatches collapsed proximately due, in part, to the overloading of the pontoon structure beyond the allowable recommended load limitation.

7.   Thereafter, repairs were effected and the cargo was loaded on the Vessel by Defendant; the Vessel then completed the voyage to Northfleet, United Kingdom, where the cargo was discharged by Defendant.

8.   As a consequence of the above, Plaintiff sustained the following damages directly attributable to Defendant's breach of its contractual obligations with Plaintiff under the governing Booking Note:

a.  the costs of repairing or replacing the hatch pontoons is estimated as Euro 168,250, or approximately $250,000.00;

b.  without cause, Defendant deducted $81,596.19 from ocean freight due and owing to Plaintiff for carriage of the subject cargo ; and

c.  without cause, Defendant has failed to pay Plaintiff the sum of $6,350.00 for 1.27 days for detention of the Vessel.

9. Under clause 4 ("Law and Jurisdiction") in the terms of the aforesaid Booking Note, disputes arising from this contract of carriage are to be brought before the courts located in the principal place of business of Plaintiff (the "Carrier"), in this case Denmark, and this proceeding is brought in aid of said litigation, both contemplated or pending, by way of attachment of its property located within this district. In that proceeding Plaintiff expects to recover from Defendant approximately $400,000.00, calculated as follows: on the claim for damage to the Vessel, the amount of $250,000.00; on the claim for unpaid ocean freight, the amount of $81,596.19; on the claim for unpaid detention of the Vessel, the amount of $6,350.00; and on Plaintiff's claim for legal expenses in the lawsuit in Denmark, along with interest on the claimed damages from November 21, 2006, in an amount to be determined.

10. Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but defendant is believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire,

or credits including but not limited to electronic fund transfers in the hands of garnishees in this district, including but not limited to the following:

1. Bank of China

2. HSBC (USA) Bank

3. Bank of New York Mellon

4. Barclay's Bank

5. JPMorgan Chase Bank

6. Wachovia Bank

7. Bank of America, N.A.

8. American Express Bank

9. Citibank, N.A.

10. Standard Chartered Bank

11. UBS, A.G.

12. BNP Paribas

13 Calyon Bank

14. Bank of Commerce

15. Deutsche Bank

WHEREFORE, Plaintiff prays for the following relief:

1. That process in due form of law according to the practice of this Court be issued against defendant and that defendant be cited to appear and answer the allegations herein;

2. That since Defendant cannot be found within this district pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendant's tangible or intangible property or any other funds held by garnishees including, but not limited to, the aforementioned garnishees in this District, which are due and owing or otherwise the property of Defendant, up to the amount of $400,000.00, to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in this Verified Complaint.

3. That such property attached pursuant to the Process of Maritime Attachment and Garnishment remain sequestered to serve as security for the payment of Plaintiff's claims as they may be embodied in any award issued in litigation in Denmark.

4. That Plaintiff have judgment against Defendant for any of its property attached in this District up to an amount of $400,000.00, and that said property be condemned to satisfy any such Judgment; and

5. That Plaintiff have such other and further and different relief as may be just and proper, including judgment against defendant, along with interest, costs and disbursements as allowable under law.

Dated in the City of New York on January 17, 2008

                                    Respectfully submitted,

                                    JUNGE & MELE, LLP
                                    *Attorneys for Plaintiff*

                                    `/s/ Peter A. Junge`

                                    _____
                                    Peter A. Junge (PJ-0745)
                                    29 Broadway
                                    New York, NY 10006
                                    (212) 269-0061

*11743 Verified Complaint.wpd*

## VERIFICATION

PETER A. JUNGE declares as follows:

1. I am admitted to the bar of this Honorable Court and am a partner in the firm of Junge & Mele, LLP, attorneys for Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officers or directors of whom are within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by Plaintiff.

5. I declare under penalty of perjury that the foregoing is true and correct.

Dated in the City of New York on January 17, 2008

/s/ Peter A. Junge

_____
Peter A. Junge

# EXHIBIT "1"

Page 1

| | |
|---|---|
| Agents (full style and address) *Brokers*<br><br>PERACO CHARTERING (USA) LLC    PCL Ref. 5815<br>2187 Atlantic Street<br>Stamford, CT 06902 | **BIMCO LINER BOOKING NOTE**<br>**CODE NAME: "CONLINEBOOKING 2000"** |
| | Place and date<br>Stamford, Connecticut                                  November 6, 2006 |
| | Vessel<br>M/V "EVA DANIELSEN" |
| Carrier (full style and address)<br><br>**K/S ARIES SHIPPING**<br>c/o Rederiet Otto Danielsen A/S<br>Kongevejen 272 a<br>DK – 2830 Virum<br>Copenhagen, Denmark | Time for shipment (about)<br>November 17-20, 2006 |
| | Port of loading**<br>Pictou or Mulgrave, Nova Scotia, in Charterers' option. |
| | Port of discharge<br>Northfleet, United Kingdom |
| Merchant* (full style and address)<br><br>**KENT LINE SALES, LTD.**<br>300 Union Street<br>P.O. Box 66<br>St. John, NB E2L 3X1<br>Canada | Merchant's representatives at loading port (full style and address)<br><br>Charterers' agents at load and discharge ports. |

| Container No./Seal No./Marks and Numbers (if available) | Number and kind of packages; description of cargo | Gross weight, kg (if available) | Measurement, m³ (if available) |
|---|---|---|---|
| | 3,600-3,650 metric tons, in Charterers' option<br>8 bale units of woodpulp: 1.5M x .8M x 1.84M<br>(all about, without guarantee) | | |

| Freight details and charges | Special terms, if agreed |
|---|---|
| • US $36.00 per metric ton, free in/out stowed, lashed, secured, dunnaged.<br>• Taxes and/or dues on vessel for Owners' account and on cargo for Charterers' account.<br>• 1.25% commission payable to PERACO CHARTERING (USA) LLC<br>• 3.75% address commission payable to Kent Line Sales, Ltd.. | • Bill(s) of Lading claused "Freight Payable as per Booking Note" or in Charterers' option to issue "Freight Prepaid" Bills of Lading providing freight has been remitted to Owners.<br>• Customary quick dispatch, both ends.<br>• Cargo to be discharged without presentation of Original Bill(s) of Lading against Charterers standard Letter of Indemnity wording, but always into custody of the agent and guarantee that cargo will only be released against presentation of Original Bill(s) of Lading. Owners confirm Master will be instructed accordingly.<br>• Owners to satisfy themselves with restrictions at oil ports.<br>• Kent Line Carrier Bill(s) of Lading to be issued. |
| Freight (state prepayable or payable at destination)<br><br>Freight payable seven (7) banking days after signing/releasing Bill(s) of Lading, any case before breaking bulk. | |

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof which shall prevail over any previous arrangements and which shall in turn be superseded (except as to deadfreight) by the terms of the Bill of Lading.

| Signature (Merchant) | Signature (Carrier) |
|---|---|
| | |

*As defined hereinafter (Cl. 1)
**(or so near thereunto as the Vessel may safely get and lie always afloat)

# FULL TERMS OF THE CARRIER'S BILL OF LADING FORM*

Page 2

**1. Definition.**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification.**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability for Carriage Between Port of Loading and Port of Discharge.**
(a) The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or, if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract. The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or with respect to deck cargo and live animals.
(b) If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, the Additional Clause.

**4. Law and Jurisdiction.**
Disputes arising out of or in connection with this Bill of Lading shall be exclusively determined by the courts and in accordance with the law of the place where the Carrier has his principal place of business, as stated on Page 1, except as provided elsewhere herein.

**5. The Scope of Carriage.**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging, or other cargo operations and maintenance of Vessel and crew.

**6. Substitution of Vessel.**
The Carrier shall be at liberty to carry the cargo or part thereof to the Port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment.**
The Carrier shall be at liberty to tranship, lighter, land and store the cargo either on shore or afloat and reship and forward the same to the Port of discharge.

**8. Liability for Pre- and On-Carriage.**
When the Carrier arranges pre-carriage of the cargo from a place other than the Vessel's Port of loading or on-carriage of the cargo to a place other than the Vessel's Port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the Port of loading and the Port of discharge even though the freight for the whole carriage has been collected by him.

**9. Loading and Discharging.**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the Vessel is ready to load and as fast as the Vessel can receive including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the Vessel is ready to load or fails to load as fast as the Vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the Vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for deadfreight and/or any overtime charges, losses, costs and expenses incurred by the Carrier.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the Vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.
(f) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**10. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines.**
(a) Freight, whether paid or not, shall be considered as fully earned upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent. shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing onboard, repairing damage to and replacing packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons.
(c) The Merchant shall be liable for all dues, duties, taxes and charges which under any denomination may be levied, inter alia, on the basis of freight, weight of cargo or tonnage of the Vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and losses which the Carrier, Vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.

**11. Lien.**
The Carrier shall have a lien on all cargo for any amount due under this contract and the costs of recovering the same and shall be entitled to sell the cargo privately or by auction to satisfy any such claims.

**12. General Average and Salvage.**
General Average shall be adjusted, stated and settled in London according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo, whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**13. Both-to-Blame Collision Clause.**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of the cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**14. Government directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the carriage under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the Vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the carriage would expose the Vessel or any cargo onboard to risk of seizure, damage or delay, in consequence of war, warlike operations, blockade, riots, civil commotions or piracy, or any person onboard to risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(c) Should it appear that epidemics; quarantine; ice; labour troubles, labour obstructions, strikes, lockouts (whether onboard or on shore); difficulties in loading or discharging would prevent the Vessel from leaving the Port of loading or reaching or entering the Port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**15. Defences and Limits of Liability for the Carrier, Servants and Agents.**
(a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant or agent of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**16. Stowage.**
(a) The Carrier shall have the right to stow cargo by means of containers, trailers, transportable tanks, flats, pallets, or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**17. Shipper-Packed Containers, trailers, transportable tanks, flats and pallets.**
(a) If a container has not been filled, packed or stowed by the Carrier, the Carrier shall not be liable for any loss of or damage to its contents and the Merchant shall cover any loss or expense incurred by the Carrier, if such loss, damage or expense has been caused by:
(i) negligent filling, packing or stowing of the container;
(ii) the contents being unsuitable for carriage in container; or
(iii) the unsuitability or defective condition of the container unless the container has been supplied by the Carrier and the unsuitability or defective condition would not have been apparent upon reasonable inspection at or prior to the time when the container was filled, packed or stowed.
(b) The provisions of sub-clause (i) of this Clause also apply with respect to trailers, transportable tanks, flats and pallets which have not been filled, packed or stowed by the Carrier.
(c) The Carrier does not accept liability for damage due to the unsuitability or defective condition of reefer equipment or trailers supplied by the Merchant.

**18. Return of Containers.**
(a) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's tariff or elsewhere.
(b) The Merchant shall be liable to the Carrier for any loss, damage to, or delay, including demurrage and detention incurred by or sustained to containers, pallets or similar articles of transport during the period between handing over to the Merchant and return to the Carrier.

**ADDITIONAL CLAUSE**
**U.S. Trade. Period of Responsibility.**
(i) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

*BIMCO LINER BILL OF LADING
Code Name: "Conlinebill 2000"
Amended January 1950; August 1952; January 1973; July 1974; August 1976; January 1978; November 2000